# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN MAE POLK, | 1:12-cv-01094-LJ0-BAM (PC) |
| Plaintiff, | ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND (ECF No. 24) |
| v. | |
| GODINA, et al., | THIRTY-DAY DEADLINE |
| Defendants. | |

## I.  Screening Requirement and Standard

Plaintiff Susan Mae Polk ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. On October 15, 2013, the Court dismissed Plaintiff's complaint with leave to amend. (ECF No. 19.) Plaintiff's first amended complaint, filed on December 18, 2013, is before the Court for screening.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

1

required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

## II.     Plaintiff's Allegations

Plaintiff is currently housed at California Institution for Women in Corona, California.  The events complained about allegedly occurred while Plaintiff was housed at Valley State Prison for Women.  Plaintiff names (1) Jeffrey Beard, Director of the California Department of Corrections and Rehabilitation ("CDCR"); (2) Correctional Officer Godina; (3) Correctional Officer Stockton; (4) Sgt. B. Pisano; (5) Lt. K. Johnson; (6) Associate Warden Scott; (7) Asst. Appeals Coordinator Jenness; (8) Asst. Appeals Coordinator Wilson; (9) Correctional Officer Burns; (10) Sgt. Briceno; and (11) Sgt. Bankston.

Upon review, Plaintiff's first amended complaint contains 15 pages of allegations wholly unrelated to claims against the named defendants in this action.  Plaintiff was expressly warned that although she had been given the opportunity to amend, it was not for the purpose of adding new, unrelated claims.  The Court therefore summarizes only those allegations related to the named defendants in this action.

///

///

Plaintiff alleges that from June 4, 2007 to June 22, 2007, Ad Seg staff, under direction from Defendant Pisano, deprived her of basic necessities and obstructed access to courts, delaying the filing of a complaint, which was dismissed as time barred.

On June 13, 2007, Plaintiff complained to the Initial Classification Committee ("ICC") in Ad Seg that on June 4, 2007, Defendant Pisano had ordered Plaintiff to sign a double cell agreement under threat of write up.  Plaintiff told Defendant Pisano that it seemed to be improper to order her to cell with inmates in Ad Seg for battery on staff and inmates given that Plaintiff was placed in Ad Seg on June 3, 2007 for reporting that inmate Anderson had choked her. Defendant Pisano falsely stated that Plaintiff was in prison for the same thing and exhorted Plaintiff to "get off the little angel act."  (ECF No. 24, p. 31.)  Plaintiff claims that Defendant Pisano's statement incited abuse from other inmates.

Between September 3, 2009, and October 5, 2009, Plaintiff submitted requests for access her to legal materials, which were in Release and Receiving ("R&R").  Plaintiff complained that the R&R property officer, Defendant Stockton, had failed to issue her legal materials.  Plaintiff explained that Defendant Stockton's refusal to issue her legal materials was hindering her efforts to pursue litigation to overturn her conviction and to recover property seized by the county, along with complaints against CCCSO and CCWF officials.

On September 23, 2009, under direction from Defendant Stockton, VSPW officials seized Plaintiff's legal materials even though she informed them that she had legal deadlines. Defendant Stockton seized the legal tools, supplies and papers that Plaintiff had in her property.

On October 4, 2009, VSPW official placed Plaintiff "c-over-c." Plaintiff alleges that this placement provided Defendant Stockton with a means to compel Plaintiff to forfeit property as a punishment for incurring five serious rules violations within 180 days.  Plaintiff reports that five write-ups were issued for Plaintiff's refusal to agree that she was compatible with inmates who were in Ad Seg for battery on staff and/or inmates.

On October 5, 2009, Defendants Stockton allegedly "extorted the forfeiture" of Plaintiff's typewriter, supplies, reading lamp, glasses, extension cord, watch, padlock, TV, head phones and bras under threat of destroying Plaintiff's legal papers, which consisted of materials needed to

challenge her conviction, the county's seizure of her equity, and litigation against the Contra Costa County Sherriff's Office and Central California Women's Facility officials. Defendant Stockton indicated that Plaintiff was placed in privilege group "C" and that she had no funds in her prison trust account. Defendant Stockton claimed that he could destroy Plaintiff's legal papers even though she had active legal cases related to those papers. Defendant Stockton also indicated that he was imposing the forfeiture of Plaintiff's property as a sanction for refusing to double cell at Central California Women's Facility. Defendant Stockton claimed he had such authority based on CDCR regulations pertaining to inmates in privilege group C.

Plaintiff alleges that Defendant Stockton failed to afford Plaintiff a hearing on whether she was liable for refusing to sign double-cell agreements in Ad Seg or to double-cell in Ad Seg. Plaintiff asserts that on the date Defendant Stockton seized her property, she appealed his decision and requested that she be permitted to obtain funds so that she could mail her TV home.

Plaintiff alleges that Defendant Stockton deliberately targeted tools that Plaintiff needed in order to prepare legal briefs: her reading glasses, reading lamps, typewriter and ribbons.

On October 5, 2009, Plaintiff complained that Defendant Stockton had extorted her property under the threat of destroying her legal papers.

Plaintiff alleges that C.O. Burns, under orders from Defendant Scott, wrote Plaintiff up on false charges of disobeying orders to double cell in Ad Seg. C.O. Burns predated the write-up to November 1, 2009, which was the day before Plaintiff complained that he tried to extort an agreement from Plaintiff that she was compatible with an inmate in Ad Seg for battery on staff and/or inmates. C.O. Burns, with the support or direction from Defendants Scott and Pisano, deprived Plaintiff of access to a law library while in Ad Seg from October 2009 to March 2010, which hindered Plaintiff pursuit of litigation against certain prison officials, seeking to overturn her conviction, and to recover property seized by the court. He later did this from June 15, 2011 to March 7, 2012.

In January 2010, Defendant Pisano arbitrarily contravened Sergeant Garret's decision partially granting Plaintiff's 602 and misrepresented facts in her re-review of Plaintiff's grievance

4

seeking access to legal materials.  Defendant Pisano denied the grievance and pretended that the grievance granted by Sergeant Garret did not exist.

On March 6, 2010, Plaintiff complained that when Defendant Pisano superseded Sergeant Garret in January 2010, Defendant Pisano retaliated against Plaintiff for complaining about Defendant Pisano's contravention of Sergeant Garret's decision granting Plaintiff access to her legal materials in R&R.

Defendant Godina, under orders from Defendants Johnson and Scott, delayed issuing Plaintiff's legal papers and supplies when she was placed in Ad Seg on March 25, 2011 for reporting being battered.  Defendant Godina harassed Plaintiff by removing staples and seizing file folders.  Plaintiff alleges that this delayed the filing of Polk v. Pittman.

On April 30, 2011, Plaintiff complained that the Defendant Godina, under direction from Defendants Johnson and Scott, delayed issuing Plaintiff's legal materials that had been seized on March 25, 2011, when Plaintiff was placed in Ad Seg.  Plaintiff also complained that Defendant Godina was harassing Plaintiff by removing staples from legal materials and threatening to remove Plaintiff's file folders.

From June or July of 2011 to February of 2012, and from February 2012 to January of 2013, Defendant Briceno deprived Plaintiff access to her legal materials in R&R causing delays in filing her habeas petition in the State Supreme Court.

From June 15, 2011, the day she returned from county jail and the day the California Supreme Court denied her habeas corpus petition to February 23, 2012, Defendants Godina and Bankston, under orders from Defendants Johnson and Scott, and in collusion with Defendants Stockton and Briceno, acted to deprive Plaintiff of access to her legal papers stored in R&R and/or arriving in the mail.  With the exception of limited access in September 2011, Defendants did not afford Plaintiff any access to legal materials stored in R&R and denied her access to trial transcripts necessary to prepare a habeas petition.  Plaintiff alleges that the clock began to tick on June 15, 2011.

Defendants Bankston, Godina, Johnson and Scott withheld additional trial transcripts mailed to her in June of 2011 when her direct criminal appeal was denied and the clock began to

tick for the filing of her habeas petition challenging her conviction.  Defendant Godina did not acknowledge receipt of the transcripts and their placement in Ad Seg storage until August of 2011 and only did so after Plaintiff wrote several letters to her attorney and prison officials.

On June 15, 2011, Defendant Stockton implied that Plaintiff was a neo-Nazi by calling her "SS."  Plaintiff alleges that she has never belonged to or endorsed any hate groups.  Plaintiff asserts that Defendant Stockton seized her legal materials, including materials for a habeas petition challenging her conviction needed to prepare and file objections and legal materials needed for objections in a case regarding her equity.

Defendants Wilson and Jenness co-signed pretextual screen outs of Plaintiff's grievances, including those seeking access to her legal materials on September 29, 2011 and October 7, 2011.  Defendants Wilson and Jenness threated to discipline Plaintiff for abusing the appeals process.  Defendant Johnson threatened to seize Plaintiff's file folders and restrict Plaintiff to one cubic foot of legal materials in his July 25, 2011 review of Plaintiff's grievance.

On July 25, 2011, Plaintiff complained that Defendants Godina and Briceno were impeding preparation of a habeas petition by depriving Plaintiff of access to her legal materials stored in R&R in collusion with Defendant Stockton.

On August 23, 2011, Plaintiff complained that Defendant Johnson's reply to her July 25, 2011 grievance was misleading and appeared to convey an implicit threat to subject Plaintiff to a limit of one cubic foot of legal materials in Ad Seg instead of seven feet.  As Plaintiff had over ten cubic feet of legal materials needed to challenge her conviction, Defendants Johnson's restriction threatened the timely filing of a habeas petition and delayed the filing of that petition.

On November 5, 2011, Plaintiff complained that Defendants Jenness and Wilson, appeals coordinators, were obstructing access to the Courts by invoking phony pretexts to reject or cancel Plaintiff's grievances seeking access to her legal materials and resources.

Plaintiff alleges that Ad Seg staff, under the direction of Defendant Bankston, Johnson and Scott, generated 13 write-ups on false charges of refusing orders or refusing assigned housing when Plaintiff merely exercised her right to refuse to agree that the inmates they ordered

her to double cell with were compatible on 11-23-09, 12-7-09, 12-22-09, 1-21-10, 6-23-11, 7-22-11, 8-11-11, 9-1-11, 9-22-11, 10-24-11, 10-27-11, 12-1-11 and 12-29-11.

Defendants Johnson and Scott endorsed nine write-ups issued to Plaintiff on false charges of refusing orders or refusing assigned housing while in Ad Seg continuously from June 15, 2011 to March 7, 2012, since her complaint on June 15, 2011 regarding threats of harm from Inmate Burns. They imposed a total loss of canteen, which deprived Plaintiff of access to legal supplies needed to prepare and file a timely petition for habeas corpus.

Plaintiff alleges that Defendants Godina, Stockton, Bankston, Pisano, Burns, Johnson, Scott, Wilson, Jenness and Briceno acted jointly or in concert to deprive her of constitutional rights.

Plaintiff seeks declaratory and injunctive relief, along with compensatory and punitive damages.

### III. Deficiencies of the Complaint

As with Plaintiff's original complaint, Plaintiff's amended complaint also fails to comply with Federal Rules of Civil Procedure 8 and 18 and fails to state a cognizable claim. However, in an abundance of caution, Plaintiff will be given a final opportunity to amend her complaint. To assist Plaintiff in amending her complaint, Plaintiff is provided with the applicable pleading and legal standards.

**A. Pleading Requirements**

**1. Federal Rule of Civil Procedure 8**

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). As noted above, detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id; see also Twombly, 550 U.S. at 556–557; Moss, 572 F.3d at 969.

Plaintiff's complaint is not a short and plain statement of her claims. It includes extraneous allegations unrelated to the defendants in this action and does not clearly state the facts that support her claims against the named defendants. Plaintiff's factual allegations are not in chronological order and many of her assertions are conclusory statements. If Plaintiff chooses to amend her complaint for a second time, she should briefly and clearly state the facts giving rise to her claims for relief against the named defendants.

### 2. Federal Rule of Civil Procedure 18

Federal Rule of Civil Procedure 18 states that "[a] party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s] but also to ensure that prisoners pay the required filing fees--for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C. § 1915(g)).

Here, Plaintiff attempts to bring suit against multiple defendants for different incidents at different times. For example, Plaintiff complains about the denial of access to her legal materials by Defendants Pisano and Godina while simultaneously complaining about the destruction of her personal property by Defendant Stockton. Plaintiff may not pursue unrelated claims against different defendants in a single action. If Plaintiff chooses to file an amended complaint and it fails to comply with Rule 18(a), all unrelated claims will be subject to dismissal.

### 3. Linkage Requirement

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

In her complaint, Plaintiff fails to identify and clearly link Defendant Beard to the cause(s) of action alleged. Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's rights.

**B. Claims for Relief**

**1. Access to Court**

Plaintiff alleges that her right to access the courts was violated by the failure of Defendants at various times to permit Plaintiff access to her legal materials in R&R storage or access to unidentified legal supplies.

Inmates have a fundamental constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346, 116 S.Ct. 2174, 2177, 135 L.Ed.2d 606 (1996). The right is limited to direct criminal appeals, habeas petitions, and civil rights actions. Id. at 354. Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). Christopher v. Harbury, 536 U.S. 403, 412-15, 122 S.Ct. 2179, 2185-87 (2002). For backward-looking claims such as that at issue here, plaintiff "must show: 1) the loss of a 'nonfrivolous' or 'arguable' underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit." Phillips v. Hust, 477 F.3d 1070, 1076 (9th Cir. 2007), quoting Christopher, 536

U.S. at 413–14, overruled on other grounds, Hust v. Phillips, 555 U.S. 1150, 129 S.Ct. 1036, 173 L.Ed.2d 466 (2007).

The first element requires that Plaintiff show she suffered an actual injury by being shut out of court. Harbury, 536 U.S. at 415, 121 S.Ct. at 2187; Lewis, 518 U.S. at 351, 116 S.Ct. at 2180; Phillips, 477 F.3d at 1076. The second element requires that Plaintiff show a defendant proximately caused the alleged violation of Plaintiff's rights, "[t]he touchstone ... [for which] is foreseeability." Phillips, 477 F.3d at 1077. Finally, the third element requires that Plaintiff show she has no other remedy than the relief available via this suit for denial of access to the courts. Id. at 1078–79.

Here, Plaintiff fails to state a cognizable claim for denial of access to the courts. Plaintiff has failed to show that she suffered an "actual injury" by being shut out of court or that she had no other remedy available for denial of access to the courts other than this action. Although Plaintiff repeatedly alleges that Defendants interfered with the filing of a habeas corpus petition or civil lawsuits, Plaintiff has not alleged any actual injury. Plaintiff mentions dismissal of a complaint as time-barred, but has not provided the Court with sufficient information to determine whether the time delay was the result of Plaintiff's inability to access her legal materials. Plaintiff also has not alleged an injury from the purported delay in filing a habeas petition. In short, Plaintiff has not alleged any actual injury and has not alleged that she had no other remedies available to her.

2. **Retaliation**

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did

not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005); accord Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

Plaintiff is attempting to assert a cause of action for retaliation in violation of the First Amendment against Defendant Stockton for deprivation of her personal property. Plaintiff's allegation that Defendant Stockton destroyed her personal property because she had too many legal materials is not sufficient to state a cognizable retaliation claim. Plaintiff has not alleged that Defendant Stockton destroyed her personal property because of any protected conduct. She also has not established that Defendant Stockton's actions did not reasonably advance a legitimate correctional goal. Rather, Plaintiff has alleged that Defendant Stockton destroyed Plaintiff's personal property due to space limitations and institutional regulations.

Plaintiff also is attempting to assert a retaliation claim against Defendants Pisano, Godina, Johnson, Briceno, Bankston, Burns, Scott, Wilson and Jenness. However, Plaintiff's allegations are not sufficient to establish that the actions of Defendants related to her legal materials, write-ups and denial of her grievances was because of any protected conduct. With respect to her legal materials, Plaintiff previously alleged that space limitations precluded access to materials in her cell. With respect to write-ups for refusing to double cell with certain inmates, Plaintiff has admitted that she repeatedly refused to agree that she was compatible with these other inmates. With respect to grievances, and as discussed more fully below, Plaintiff cannot state a cognizable claim arising out of the processing of her grievances.

### 3. Processing of Grievances

Plaintiff appears to complain about the processing of her grievances by various persons. Plaintiff does not have a constitutionally protected right to have her appeals accepted or processed. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988 ). The prison grievance procedure does not confer any substantive rights upon inmates and actions in reviewing appeals cannot serve as a basis for liability under section 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993 ). Accordingly, Plaintiff has not stated a cognizable claim arising out of the screening and reviewing of her grievances.
///

### 4. Deprivation of Personal Property

While an authorized, intentional deprivation of property is actionable under the Due Process Clause, neither a negligent nor intentional unauthorized deprivation of property by a prison official is actionable if a meaningful postdeprivation remedy is available for the loss. Hudson v. Palmer, 468 U.S. 517, 533 (1984); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1984).

To the extent that Plaintiff claims that her property was intentionally destroyed by Defendant Stockton as a form of retaliation, this would be an unauthorized, intentional deprivation. Due Process is therefore satisfied if there is a meaningful post-deprivation remedy available to Plaintiff. Hudson, 468 U.S. at 533. Plaintiff has an adequate post-deprivation remedy available under California law. Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810–895). Accordingly, Plaintiff has failed to state a cognizable claim for the alleged destruction of her personal property.

### 5. Conspiracy

A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540–41 (9th Cir.1989) (citation omitted)), and an actual deprivation of constitutional right, Hart v. Parks, 450 F .3d 1059, 1071 (9th Cir.2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir.1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

Plaintiff has failed to allege any plausible facts supporting the existence of a conspiracy between defendants. Plaintiff's conclusory allegations are not sufficient.

### 6. Declaratory Relief

In addition to damages, Plaintiff seeks a declaration that his rights were violated. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood

Village, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985). In the event that this action reaches trial and the jury returns a verdict in favor of Plaintiff, the verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that any defendant violated Plaintiff's rights is unnecessary.

### 7. Injunctive Relief

To the extent Plaintiff seeks injunctive relief regarding her conditions of confinement at Valley State Prison for Women, this request is moot. Plaintiff has been transferred to the California Institution for Women. A request for injunctive relief becomes moot if a prisoner is transferred. Andrews v. Cervantes, 493 F.3d 1047, 1053 n. 5 (9th Cir. 2007) (citing Johnson v. Moore, 948 F.2d 517, 510 (9th Cir.1991) (per curiam). There is no indication that Plaintiff expects to be transferred back to Valley State Prison for Women. Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir. 1996).

### IV.   Conclusion and Order

Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 8 and 18, and fails to state a cognizable claim upon which relief may be granted under section 1983. However, in an abundance of caution, the Court will provide Plaintiff with a final opportunity to amend her complaint to cure the identified deficiencies. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. Iqbal, 556 U.S. at 676. Plaintiff also must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555). Plaintiff should note that although she has been given the opportunity to amend, it is not for the purpose of adding new, unrelated claims. As Plaintiff must comply with Rules 8 and 18, twenty-five pages shall be more than sufficient for Plaintiff to identify her claims and set forth specific facts

in support of those claims.  Accordingly, Plaintiff's third amended complaint may not exceed twenty-five pages in length, and it will be stricken from the record if it violates this page limitation.

      Finally, Plaintiff is advised that pursuant to Local Rule 220, the amended complaint must be "complete in itself without reference to the prior or superseded pleading."  Local Rule 220.  Once an amended complaint is filed, the original complaint no longer serves any function in the case.  Plaintiff's amended complaint also should be clearly and boldly titled "Second Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

      Based on the foregoing, it is HEREBY ORDERED that:

      1.    The Clerk's Office shall send Plaintiff a complaint form;

      2.    Plaintiff's complaint is dismissed for failure to comply with Federal Rules of Civil Procedure 8 and 18 and for failure state a claim.

      3.    Within thirty (30) days from the date of service of this order, Plaintiff shall file a second amended complaint;

      4.    Plaintiff's second amended complaint may not exceed twenty-five (25) pages; and

      5.    **If Plaintiff fails to comply with this order, the Court will dismiss this action for failure to obey a court order and for failure to state a claim.**

IT IS SO ORDERED.

    Dated:  **January 6, 2015**            /s/ *Barbara A. McAuliffe*
                                                          UNITED STATES MAGISTRATE JUDGE