# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN MAE POLK,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>GODINA, et al.,<br><br>　　　　Defendants. | 1:12-cv-01094-LJ0-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF ACTION FOR FAILURE TO COMPLY WITH FEDERAL RULES AND STATE A CLAIM, AND DISMISSAL OF PENDING MOTIONS AS MOOT<br><br>(ECF Nos. 33, 34, 36, 37, 38, 41, 42)<br><br>FOURTEEN-DAY OBJECTION DEADLINE |

**<u>Findings and Recommendations</u>**

**I.     <u>Screening Requirement and Standard</u>**

Plaintiff Susan Mae Polk ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. On October 15, 2013, the Court dismissed Plaintiff's complaint with leave to amend. (ECF No. 19.) Plaintiff filed her first amended complaint on December 18, 2013. (ECF No. 24.) On January 7, 2014, the Court dismissed Plaintiff's first amended complaint with leave to amend. (ECF No. 25.) Plaintiff's second amended complaint, filed on April 15, 2015, is now before the Court for screening. (ECF. No. 41.)

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. §

1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

**II.     Plaintiff's Allegations**

Plaintiff is currently housed at the California Institution for Women in Corona, California. The events complained about allegedly occurred while Plaintiff was housed at Valley State Prison for Women ("VSP"). Plaintiff names (1) Correctional Officer Godina; (2) Correctional Officer Stockton; (3) Sergeant Bankston; (4) Sergeant B. Pisano; (5) Sergeant Whidden; (6) Correctional Officer Burns; (7) Lt. K. Johnson; (8) Associate Warden Scott; (9) Asst. Appeals Coordinator Wilson; (10) Asst. Appeals Coordinator Jenness; (11) Sergeant

Briceno; (12) California Department of Corrections and Rehabilitation ("CDCR") Director M.D. Stainer; (13) CDCR Secretary Matthew Cate; and (14) John and Jane Does 1-20 as Defendants. Defendants are sued in their individual and official capacities.

Upon review, Plaintiff's second amended complaint, like her first amended complaint, contains several pages of allegations wholly unrelated to claims against the named defendants in this action. Plaintiff was repeatedly and expressly warned that although she had been given the opportunity to amend, it was not for the purpose of adding new, unrelated claims. The Court therefore summarizes only those allegations related to the named defendants in this action.

Plaintiff alleges as follows: Defendants Pisano, Godina, Johnson, Stockton, Briceno, Burns, Whidden, Wilson, Jenness, Scott and Cate conspired to retaliate against her for pursuing grievances and to thwart her challenges to her conviction, her conditions of confinement, and her civil suits. She was in custody at the Contra Costa County Sheriff's Office ("CCCSO") from October 14, 2002 to February 27, 2007, except for seven months sometime in 2004-05, when she was on bail. On February 27, 2007, she was transferred to state custody at the VSP.

On May 3, 2007, Plaintiff was tortured and physically assaulted by people who are not named as defendants in this action. She complained on May 4, 2007 to Defendant Scott, whereupon he "threatened [Plaintiff] would never get out of prison if [she] didn't recant." (ECF No. 41, p. 11.)[1] Defendant Scott also falsely asserted to a Classification Committee ("CC") that Plaintiff was in Mental Health Svs. Delivery System ("MHSDS") when she has never been assigned to MDSDS nor has she ever been in mental health treatment. Plaintiff filed a grievance against Defendant Scott for falsifying documents in retaliation for pursuing grievances and for covering up the May 3, 2007 incident.

On or about June 3, 2007, Plaintiff was placed in Ad Seg for protection after she had been choked and a volume of her trial transcripts were stolen by another inmate, Anderson. She filed a grievance. A few days later, on or about June 8, 2007, Defendant Pisano ordered Plaintiff to sign an agreement to double cell in Ad Seg with another inmate, under threat of a write-up. When she refused to be housed with the inmate, whom she deemed violent, Defendant Pisano

---

[1] All page numbers in his opinion correspond to the Court's CM/ECF pagination.

rebuked her and exhorted her to "get off the little angel act." (ECF No. 41, p. 17-18.) This comment incited an inmate in the cell adjacent to Plaintiff's cell to yell profanities at her.

On June 13, 2007, Plaintiff complained that Defendant Pisano had been denying her access to legal materials and writing supplies, and that she had ordered her to sign an agreement to double cell. Plaintiff also complained that Defendant Pisano incited violence against her.

On or about June 22, 2007, Plaintiff was transferred to the Central California Women's Facility ("CCWF"), which is across the street from the VSP. On September 23, 2009, Plaintiff was transferred back to VSP. Upon Plaintiff's return to VSP, Defendant Stockton seized her legal materials. From September 23, 2009 to October 5, 2009, Plaintiff sent numerous requests to Release and Receiving ("R&R") for access to her legal materials, explaining that she had deadlines in Polk v. Cavin, et al., 08-1483-MMC (N.D. Cal.) and a challenge to her criminal conviction in People v. Polk, A117633 (1st App. Dist. Cal). Defendant Stockton ignored her requests.

On October 4, 2009, Defendant Stockton issued Plaintiff a pass to R&R for October 5, 2009. That same day, a CC placed Plaintiff in privilege group "C" based on write-ups. When Plaintiff arrived in R&R on October 5, 2009, Defendant Stockton then claimed that the CC's actions provided him with the authority to destroy her legal papers. Defendant Stockton's co-workers would not support his assertion. He then destroyed Plaintiff's typewriter, typewriter supplies, reading lamp, reading glasses, extension cord, watch, padlock, headphones, bras, and television. Defendant Stockton stated he was authorized to destroy Plaintiff's personal property based on regulations allowing for the disposal of entertainment appliances and musical instruments belonging to persons in privilege group C. However, it was customary to allow inmates to mail such items home or to store the items until the inmate was restored to a different privilege group, not destroy the items.

Plaintiff required her typewriter, reading glasses, lamp, and extension cord to prepare and file legal briefs. She filed a grievance the same day her items were destroyed. She also filed a grievance in December 2009 seeking restoration of her property and access to her legal papers, which was partially granted by the next R&R officer, Sergeant Garret.

4

On November 2, 2009, Defendant Burns, under orders from Defendant Scott, threatened to write Plaintiff up for refusing to double cell with a certain violent inmate. She refused to double cell with that inmate, and then complained in writing to Defendant Scott that he and Defendant Burns were jeopardizing her safety by ordering her to double cell in Ad Seg when she had been placed there to be protected from violent inmates. The next day, Defendants Burns and Scott issued Plaintiff a write-up on charges of refusing an order to double cell. To cover-up that this write-up was issued in retaliation against Plaintiff, they predated the write-up to November 1, 2009. Plaintiff promptly filed a grievance, and Defendants Scott, Burns, Bankston, and Johnson then issued 13 write-ups on false charges of refusing orders or refusing assigned housing while she was in Ad Seg on 11-23-09, 12-7-09, 12-22-09, 1-21-09, 6-23-11, 7-22-11, 8-11-11, 9-1-11, 9-22-11, 10-24-11, 10-27-11, 12-1-11 and 12-29-11. As punishment, those Defendants imposed a total loss of canteen privileges for purchasing writing supplies she needed to prepare her habeas petition and briefs in her civil rights litigation.

In January 2010, Defendants Pisano and Wilson falsified official documents pretending that the grievance Sergeant Garret had partially granted did not exist.[2] Those defendants also misplaced Plaintiff's resubmitted grievance, and assigned a new log number to the copy of the grievance Plaintiff submitted with a cover letter seeking to trace the grievance that Sergeant Garret had partially granted. Defendant Pisano also denied the resubmitted grievance.

Defendants Stockton and Pisano provided Plaintiff no access to her legal materials until on or about June 21, 2010, despite her twice-monthly requests to R&R for access. Other inmates were able to access their materials on a weekly basis.

In June or July 2010, Defendant Briceno succeeded Defendant Pisano as the R&R sergeant. From June 2010 to February 2011, Defendants Briceno and Stockton afforded Plaintiff no access to her legal materials despite her regular requests to R&R for access made every two weeks or so. Her requests were ignored. Her deadline under the Anti-Terrorism and Death Penalty Act to file a federal petition began to run on June 28, 2011, absent equitable tolling.

---

[2] In making this specific allegation, Plaintiff alleges that Defendant Wilson worked at the CCWF. Elsewhere in this complaint (and in her previous complaint), she alleges that Defendant Wilson worked at the VSP at all times mentioned in her complaint. She provides no explanation for this contradiction.

In the winter of 2010 and spring of 2011, Plaintiff saw Defendant Briceno from time to time in the yard and requested access to her legal materials stored in R&R. She told him he was preventing her from meeting legal deadlines in Polk v. Cavin and in challenging her criminal conviction. Defendant Briceno said it was Defendant Stockton's "call," although he was Defendant Stockton's boss. (ECF. No. 41, p. 22.) Defendant Briceno refused to intervene or issue Plaintiff a pass.

On March 25, 2011, Defendants Godina, Johnson, Scott, and Bankston seized and withheld Plaintiff's legal materials. As a result, she could not complete a civil complaint in Polk v. Pittman et al., 11-cv-00728-AWI-BAM (E.D. Cal.), until the last day of the statutory deadline in that case—May 4, 2011.

On April 30, 2011, Plaintiff complained that Defendant Godina was delaying issuance of her legal papers to her in Ad Seg, and harassing her by removing staples and threating to seize her file folders, which she needed to keep her legal papers organized.

On June 15, 2011, Defendant Stockton seized legal papers that Plaintiff had with her upon return from a reimbursement hearing for the costs of her defense in People v. Polk, No. 05-0316687 (Super. Ct. of Cal.). He placed them in R&R storage, although she had objections and a notice of appeal due in that case. Defendant Stockton called Plaintiff an "SS" and a neo-Nazi at this time, although she is not a neo-Nazi and does not subscribe to neo-Nazi ideals. Defendants Stockton, Briceno and Scott withheld access to these legal materials in R&R until February 18, 2012, when they provided her access to the legal materials they had seized on June 15, 2011. Plaintiff's lack of access to these legal materials caused her to miss the deadline to object to the judge's order for Plaintiff to reimburse the county for her defense in People v. Polk, and delayed preparation of her petition to exhaust state remedies in her case before the California Supreme Court, No. S204067. It also "paved the way" for the state's time-bar defense to her federal habeas petition in Polk v. Hughes, 12-05986-VC (N.D. Cal.), which was dismissed on March 24, 2015 as time-barred with leave to appeal on the grounds of whether equitable tolling is applicable. (ECF. No. 41, pp. 22-23.)

Defendants Godina, Johnson, Scott, and Bankston also colluded with Defendants Stockton and Briceno to withhold access from Plaintiff to her legal papers in R&R storage from June 15, 2011 to February 23, 2012. This included three of seven boxes containing the record from Plaintiff's appeal in People v. Polk, which her counsel mailed to her in April 2011. From June 22, 2011 through August 4, 2011, Defendants Bankston and Godina also deliberately concealed the mail delivery to Plaintiff of the remaining four boxes containing her appellate record. On August 5, 2011, Defendant Godina issued only two of the four delivered boxes to Plaintiff, and withheld the other two until March 7, 2012. In doing so, Defendants hindered Plaintiff's pursuit of relief from her convictions and conditions of confinement in People v. Polk.

On July 25, 2011, Defendant Johnson told Plaintiff he would or could restrict her to one cubic foot of legal materials in her cell, although she could not effectively pursue her litigation without her other six feet of legal materials. Plaintiff understood this to be an implicit threat for her complaining about Godina's actions.

In September and October 2011, Defendants Wilson and Jenness threatened to discipline Plaintiff for pursuing grievances.

On April 9, 2012, Defendants Stockton, Whidden and Johnson, acting under orders from Defendant Scott, ordered Plaintiff to place the legal materials she had in her cell into R&R storage. They then withheld access to those materials until May 10, 2012, 18 days before the expiration of the deadline for Plaintiff to file her federal habeas petition in Polk v. Hughes. As a result, Plaintiff could not file her petition to exhaust state remedies before the June 28, 2012 deadline, and her petition was dismissed as time-barred on March 24, 2015. She also could not sufficiently review the record for appeal and was compelled to omit meritorious claims from that petition.

Plaintiff exhausted the administrative process for all claims raised in this second amended complaint, except for some grievances that Defendants Wilson and/or Jenness lost or prevented her from pursuing by cancelling them on a pretext. This pretext was that she filed more than one grievance in a seven-day period, which they deemed an "abuse" of the appeals process. (ECF No. 41, p. 23.)

Plaintiff appealed any grievances which were not granted to Defendant Cate. She also applied directly to him for relief when Defendant Wilson failed to enforce decisions granting her grievances seeking access to her legal materials, and when her right to file grievances was suspended for six months due to exceeding the one-grievance-per-week limit. Defendant Cate provided Plaintiff no relief; his Office of Inmate Appeals repeatedly referred Plaintiff back to Defendants Wilson and Jenness.

From October 2009 until March 2010, March 2011 to May 2011, and June 15, 2011 to March 7, 2012, Defendants Burns, Scott, Pisano, and/or Bankston, under orders from Johnson and Scott, deprived Plaintiff of access to the law library. Defendant Burns also repeatedly concealed passes issued by the law librarian to Plaintiff, despite the fact that she was eligible for physical access to the law library for at least 4 hours per week. This deprivation of law library access resulted in delaying Plaintiff's pursuit of relief from her criminal conviction in Polk v. Hughes and in her habeas petition to the California Supreme Court, and hindered her pursuit of civil rights complaints in Polk v. Cavin, Polk v. Pittman, Polk v. Lattimore, 12-cv-01156-AWI-GSA (E.D. Cal.), and in this case.

Plaintiff seeks declaratory and injunctive relief, along with compensatory and punitive damages and costs.

### III. Deficiencies of the Second Amended Complaint

#### A. Pleading Requirements

##### 1. Federal Rule of Civil Procedure 8

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). As noted above, detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id; see also Twombly, 550 U.S. at 556–557; Moss, 572 F.3d at 969.

8

Plaintiff's complaint is not a short and plain statement of her claims.  It includes extraneous allegations unrelated to the defendants in this action and does not clearly state the facts that support her claims against the named defendants.  Plaintiff's factual allegations are not in chronological order and many of her assertions are conclusory statements.  Indeed, certain allegations also contradict each other or are inconsistent.

### 2. Federal Rule of Civil Procedure 18

Federal Rule of Civil Procedure 18 states that "[a] party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s] but also to ensure that prisoners pay the required filing fees--for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C. § 1915(g)).

Despite being repeatedly informed that her complaint must comply with Rule 18, Plaintiff continues to attempt to assert claims against multiple defendants concerning different incidents at different times over a period of several years.  For example, Plaintiff complains about threats of discipline and grievance-related misconduct by Defendant Jenness while simultaneously complaining about the destruction of her personal property by Defendant Stockton.  Plaintiff may not pursue unrelated claims against different defendants in a single action.  Had Plaintiff alleged sufficient facts to state a claim against one or more of the named Defendants, she might have been allowed to proceed on those claims while the Court dismissed the unrelated claims.  However, Plaintiff has repeatedly failed to state a claim against any of the Defendants in this action, despite multiple chances to amend her complaint.

///

///

### 3. Linkage Requirement

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

In her complaint, Plaintiff fails to allege any facts linking Defendant Stainer to any deprivation of her constitutional rights. Her allegations against him are limited to one conclusory sentence: "I have been and will continue to be irreparably injured by the conduct of the C.D.C.R. director, defendant Stainer, unless the court grants the declaratory and injunctive relief I seek." (ECF No. 41, p. 29.) This conclusory statement is not sufficient to state any claim against Defendant Stainer.

### 4. Official Capacity Claims and Damages

To the extent Plaintiff seeks to bring claims against certain defendants in their official capacities for monetary damages, she may not do so. The Eleventh Amendment prohibits suits for monetary damages against a State, its agencies, and state officials acting in their official capacities. Aholelei v. Dep't of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007).

///
///
///
///

**B. Claims for Relief**

    **1. Access to Court**

Plaintiff alleges that her right to access the courts was violated by the failure of Defendants at various times to permit Plaintiff access to her legal materials in R&R storage, access to writing supplies, or access to the law library.

Inmates have a fundamental constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346, 116 S.Ct. 2174, 2177, 135 L.Ed.2d 606 (1996). The right is limited to direct criminal appeals, habeas petitions, and civil rights actions. Id. at 354. Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). Christopher v. Harbury, 536 U.S. 403, 412-15, 122 S.Ct. 2179, 2185-87 (2002). For backward-looking claims such as that at issue here, plaintiff "must show: 1) the loss of a 'nonfrivolous' or 'arguable' underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit." Phillips v. Hust, 477 F.3d 1070, 1076 (9th Cir. 2007), quoting Christopher, 536 U.S. at 413–14, overruled on other grounds, Hust v. Phillips, 555 U.S. 1150, 129 S.Ct. 1036, 173 L.Ed.2d 466 (2007).

The first element requires that Plaintiff show she suffered an actual injury by being shut out of court. Harbury, 536 U.S. at 415, 121 S.Ct. at 2187; Lewis, 518 U.S. at 351, 116 S.Ct. at 2180; Phillips, 477 F.3d at 1076. The second element requires that Plaintiff show a defendant proximately caused the alleged violation of Plaintiff's rights, "[t]he touchstone ... [for which] is foreseeability." Phillips, 477 F.3d at 1077. Finally, the third element requires that Plaintiff show she has no other remedy than the relief available via this suit for denial of access to the courts. Id. at 1078–79.

Here, Plaintiff fails to state a cognizable claim for denial of access to the courts. Plaintiff has failed to show that she suffered an "actual injury" by being shut out of court or that she had no other remedy available for denial of access to the courts other than this action. Although Plaintiff repeatedly alleges that Defendants interfered with the filing of a habeas corpus petition

or civil lawsuits, she has not alleged any actual injury. In several instances, Plaintiff asserts she was delayed in preparing briefs, petitions or other filings, but does not allege that she actually failed to meet a deadline or otherwise suffered an adverse consequence. For example, she alleges she was delayed in completing her civil complaint in Polk v. Pittman due to conduct by Defendants Godina, Johnson, Scott, and Bankston, but further alleges she was able to complete the document on the last day of the statutory deadline.

Plaintiff does allege (1) missing a deadline to object to the order to reimburse the county for her defense costs in People v. Polk; and (2) having to leave certain meritorious claims out of a habeas petition, which was also ultimately dismissed on March 24, 2015, as time-barred. Regarding the missed deadline to object to the reimbursement order, as noted above the right to access to the courts is limited to direct and collateral attacks on a criminal conviction and civil rights actions, not the type of claim she is asserting she missed the deadline to assert. Lewis, 518 U.S. at 354.

Regarding the habeas petition, although Plaintiff alleges she was denied access to her legal materials necessary to prepare that petition from time to time, she also admits that she had access to her materials for other substantial periods of time. For example, Plaintiff alleges that she had some legal materials that were relevant to her habeas petition on her person on June 15, 2011 which were seized on that date, but then returned to her on February 18, 2011, several months before she alleges her habeas petition deadline began to run on June 28, 2011. She then alleges that on August 5, 2011, she was issued two of seven boxes containing her record on appeal from her criminal case to use in preparing her habeas petition, three more boxes on February 23, 2012, and the final two boxes on March 7, 2012. Finally, she alleges that her habeas-related legal materials were then put into storage over a month later on April 9, 2012, but then returned to her again on May 10, 2012, at least 18 days before the deadline to file her habeas petition (or possibly more, as she alleges elsewhere that her complaint that her deadline was June 28, 2012). Likewise, Plaintiff's allegations show an admission of access to a law library from May 2011 through June 15, 2011, and from March 7, 2012 until the time her habeas petition was due.

Furthermore, Plaintiff has not alleged facts showing the deprivation of her legal materials was the cause of her leaving out claims from her petition or missing her deadline for filing it. Plaintiff also affirmatively alleges that she was granted leave to appeal her habeas petition's dismissal on the grounds of whether equitable tolling is applicable, and does not explain the ultimate disposition of that matter. Thus, Plaintiff has not alleged an injury from the purported dismissal of that petition and that she had no other remedies available to her. In short, Plaintiff has not alleged—and, given her affirmative allegations, cannot allege—sufficient facts to state any claim for deprivation of access to the courts.

### 2. Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005); accord Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

Plaintiff is attempting to assert a cause of action for retaliation in violation of the First Amendment against Defendant Stockton for deprivation of her personal property. Plaintiff's allegation that Defendant Stockton destroyed her personal property based on institutional regulations is not sufficient to state a cognizable retaliation claim. Plaintiff has not alleged that Defendant Stockton destroyed her personal property because of any protected conduct. She also has not established that Defendant Stockton's actions did not reasonably advance a legitimate correctional goal.

Plaintiff also is attempting to assert a retaliation claim against Defendants Pisano, Burns, Scott, Bankston, Johnson, Wilson, Briceno, Godina, Stockton, Jenness, and Whidden for their actions related to her legal materials, write-ups, and the denial and cancellation of her

grievances. However, Plaintiff's allegations do not establish that Defendants took adverse actions against her because of any protected conduct. Regarding her legal materials, Plaintiff previously alleged that space limitations precluded access to materials in her cell, and alleges no facts in the current amended complaint showing any other motivation, despite now being given multiple changes to add such facts. She states that Defendant Johnson restricted her access to legal materials in retaliation for her making complaints against Defendant Godina, but this is merely a conclusory statement; she alleges no facts in support.

With respect to allegedly "false" write-ups for refusing to double cell with certain inmates, Plaintiff admits that she repeatedly refused to agree to be housed in the same cell with these inmates. Plaintiff also makes a conclusory allegation that Defendants Wilson and Jenness threatened to discipline her for pursuing grievances. However, instead of supporting this claim with factual allegations, she undermines it by alleging that those Defendants prevented her from pursuing her grievances on the grounds that she abused the appeals process by filing more than one grievance in a seven-day period, which she admits she did.

Regarding her failed grievances, as discussed in more detail below, Plaintiff cannot state a cognizable claim arising out of the processing of grievances.

Plaintiff also attempts to assert a retaliation claim against Defendant Scott for (1) threatening her that she would never get out of prison after she complained about the May 3, 2007 incident; and (2) falsely asserting that she was in the MHSDS to a CC. However, she alleges no facts showing that these actions caused her any actual injury or adverse consequences.

### 3. Processing of Grievances

Plaintiff complains about the processing of her grievances by Defendants Pisano, Wilson, Jenness, and Cate. The existence of a grievance process does not create a protected liberty interest entitling inmates to a particular result or allowing them to seek redress under the Constitution for the violation of any procedural protections set forth in the governing state regulations. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). As a result, actions by prison officials in reviewing grievances cannot serve as a basis for liability under section 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir.

1993). Accordingly, by merely alleging denials, cancellations, or other issues arising out of the screening and reviewing of her grievances, Plaintiff has not stated a cognizable claim.

### 4. Deprivation of Personal Property

While an unauthorized, intentional deprivation of property is actionable under the Due Process Clause, neither a negligent nor an unauthorized, intentional deprivation of property by a prison official is actionable if a meaningful post-deprivation remedy is available for the loss. Hudson v. Palmer, 468 U.S. 517, 533 (1984); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1984). To the extent that Plaintiff claims that her property was intentionally destroyed by Defendant Stockton as a form of retaliation, this would be an unauthorized, intentional deprivation. Due Process is therefore satisfied if there is a meaningful post-deprivation remedy available to Plaintiff. Hudson, 468 U.S. at 533. Plaintiff has an adequate post-deprivation remedy available under California law. Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810–895). Accordingly, Plaintiff has failed to state a cognizable claim for the alleged destruction of her personal property.

### 5. Conspiracy

A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540–41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional right, Hart v. Parks, 450 F .3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

Plaintiff has failed to allege any plausible facts supporting the existence of a conspiracy among Defendants; her conclusory allegations that they conspired to retaliate against her and to thwart her litigation efforts are not sufficient.

///

**IV.     Pending Motions**

Plaintiff has made several recent filings which are still pending, including (1) objections filed February 23, 2015 and March 2, 2015 to the Court's February 10, 2015 order, (ECF. Nos. 33, 34.); a motion for reconsideration filed March 6, 2015 of the Court's February 20, 2015 order, (ECF No. 36.); a motion to stay filed March 13, 2015, (ECF. No 37.); a supplemental request for a stay filed April 13, 2015, (ECF. No. 38.); and objections filed May 7, 2015 to the Court's April 15, 2015 order, (ECF No. 42.).  Since the Court recommends dismissing this action in its entirety, each of these motions should be denied as moot.

**V.      Conclusion and Order**

Plaintiff's second amended complaint fails to comply with relevant pleading standards and fails to state a cognizable section 1983 claim. Plaintiff's second amended complaint also fails to comply with previous court orders regarding the applicable pleading and legal standards. Plaintiff has had multiple opportunities to cure the deficiencies identified by the Court and has failed to do so.  Therefore, further leave to amend is not warranted.  See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Plaintiff's objections filed February 23, 2015 and March 2, 2015 to the Court's February 10, 2015 order, (ECF. Nos. 33, 34); motion for reconsideration filed March 6, 2015 of the Court's February 20, 2015 order, (ECF No. 36); motion to stay filed March 13, 2015, (ECF. No 37); supplemental request for a stay filed April 13, 2015, (ECF. No. 38); and objections filed May 7, 2015 to the Court's April 15, 2015 order, (ECF No. 42), be DENIED as moot;
2. This action be DISMISSED, with prejudice, for failure to comply with Federal Rules of Civil Procedure 8 and 18 and for failure state a claim; and
3. The dismissal be subject to the "three-strikes" provision set forth in 28 U.S.C. § 1915(g).

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within

**fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

   Dated:   **August 17, 2015**                    /s/ *Barbara A. McAuliffe*                
                                                              UNITED STATES MAGISTRATE JUDGE